Good morning. May it please the court, counsel, I'm Shane Lulich and I represent the appellants. I appreciate the opportunity to present argument today on their behalf. The case before the district court in this matter was an interpleader case, and the district court's decision should have been controlled by the rule established by this court for interpleader, that rule being that the district court should determine the equities and interests related to the issues at stake. The Eighth Circuit Court of Appeal has treated interpleader as an equitable action controlled by equitable principles pursuant to Great American Insurance v. Bank of Bellevue. In this case, the interpleader issue was division of the benefit from a life insurance contract. The district court did not properly apply the interpleader rule to the ends of addressing the equities at stake, and as a result, the appellants are requesting that this court reverse the district court's findings, make its own findings as it determines fair and proper, and direct the district court accordingly. The application of this court's interpleader rule by the district court should have spoken to several issues in the case before the district court. Those issues being summary judgment as to collateral estoppel, summary judgment as to Kansas corporation law, novation contract and equitable estoppel, and as well as interest for the loss of use of money for insurance premiums paid. Are you suggesting that the equities that normally would be applied in an interpleader supersede collateral estoppel? No, I think they work in conjunction. However, it's the appellant's position that the court didn't take an equitable approach as complete as it should have. The court is aware that the court did award the appellant Dora Clark Walls' estate for premiums paid. However, those premiums were paid over a 20-year period of time. There was no award for loss of use of money, which she would have incurred over that time. Is there any case law that requires the judge to provide benefits for a lost opportunity cost or interest? It looked to me like when I was looking at the cases, mostly an abuse of discretion review, so it's a discretionary judgment. But do you have a case? I believe I cited cases in my brief to that effect. There were cases that awarded it, but as a matter of discretion. The question is, why is it an abuse of discretion to decline to do it? Well, Your Honor, I think it's an abuse of discretion because it's not a complete consideration of the equity insofar as Ms. Dora Clark Wall paid these premiums over that extended period of time. And to award her the principal only, but yet award the appellee the windfall of the insurance benefit is contrary to the ends of equity. Well, is it actually? I mean, this is a policy that started off as a 20-year level term policy, then was renewed as a 30-year level term policy. So it's actually a separate policy. There's a real question on the second policy, whether or not your client even had an insurable interest that has been demonstrably established in the record, right? And so maybe the equities at that point just did balance out and just say, you know, it's unfair for you not to be reimbursed for the out-of-pocket loss. But anything beyond that is? Judge, Your Honor, respectfully, I believe the equity should be considered insofar as the legal issues with respect to the corporation. That said, I think further, the standard of review insofar as summary judgment being favorable to the appellant, an equitable consideration on both of those points. I believe that the district court should have at least considered the issue, which it didn't. The issue before the district court was distinct from that pending in the circuit court. The circuit court issue was limited to a standing to prosecute a probate claim, whereas that before the district court was a corporation standing insofar as in its life, and whether or not existed insofar as to realize the benefits of a life insurance policy. So back to the court's question, I believe that equity needs to be considered insofar as interpretation of Kansas corporation law. That said, I do feel obliged to advise this court that we made argument in our brief insofar as prong two, or I'm sorry, prong four of the equitable estoppel issue that there had not been finality. Well, there has now been finality in the Missouri appellate court. As of August the 31st, the Missouri Supreme Court denied the appellant Kansas City Chrome Shots petition for review. But that said, the issues before the Missouri Court of Appeals were distinct, as I said earlier. And in that respect, I think it's noteworthy that on page seven of the appellant's brief, there's a citation to the circuit court. The circuit court drew the distinction that I've suggested in the brief and I'm arguing today, and that is that the issues before the district court that are being reviewed by this court are distinct from that which the circuit court judge was considering. And he even acknowledged as much. Did I answer your question, Judge? Yes, thank you. Okay. If the court considers KSA 17-7002, the only logical conclusion from that insofar as the corporation issue is that upon reinstatement, the Kansas City Chrome Shop was reinstated in full. And the only logical conclusion from that statute is that Kansas City Chrome Shop continued to exist since its exception. And even though it was administratively forfeited, once it was reinstated, that reinstatement was retroactive to its inception and included all powers that it could have had, including contract and the ability to take under a life insurance contract. And the other logical conclusion from that Kansas Corporation statute is that since the Kansas Secretary of State recognizes that Kansas City Chrome Shop is a living, viable entity now, it could have never ceased to exist or died as a corporation. What was the time period between the original forfeiture and the action that you describe as reinstatement? The original forfeiture was in 1991. The reinstatement was in 2020. May I reserve time and continue to respond to your question? Can I ask another question? Sure, of course. So that's a pretty long period of time. Does that really – I mean, that would create a whole lot of problems if that kind of a rule was accepted, wouldn't it? This long period of time, then reinstatement, and then you say, well, it never ceased to exist? Well – When the statute provides a three-year period? Well, that three-year period is limited and nuanced, and that's insofar as actual dissolution of the corporation, which never happened. I think it's noteworthy, Judge Shepard, that the corporation continued to do business despite the forfeiture. Now, granted, it could have been managed better insofar as the record-keeping with the Secretary of State, but there was evidence presented that it was Charles Smith's responsibility as Vice President of Kansas City Chrome Shop to ensure that the annual reports with the Kansas Secretary of State were filed, which according to the record that the district court adopted from the Jackson County Circuit Probate Court and the testimony of Mike Clark and Dora Clark Wall, was Charles Smith neglected to do that. Thank you. Mr. Schneiders. May it please the Court. Good morning, Your Honors. Robert Schneiders on behalf of the epilee, the estate of Charles Smith. It's important to note, as Mr. Lilich pointed out, that after the briefs were filed in this case, the Missouri Court of Appeals issued its opinion affirming the Jackson County Probate Court's denial of the claim filed on behalf of Kansas City Chrome Shop, Inc. In granting summary judgment on behalf against Kansas City Chrome Shop, Inc., Judge Wimes adopted the probate court's factual finding that the corporation was dissolved and not able to bring claims more than three years after its administrative forfeiture. As such, the corporation was not in existence at the time of Mr. Smith's death, and there was no living beneficiary. Mr. Lilich had referred to the time period there, and there was, in fact, a 30-year time period between the dissolution of the corporation, the administrative forfeiture, and the ultimate reinstatement. In the opinion, Judge Gabbert conducted an in-depth analysis of the Kansas statute that the appellate has relied on, including 7002 that he had referenced in his argument. And Judge Gabbert points out that the B.H. Holdings case, which appellant relies heavily upon, involved an LLC, which is governed by a different statute. Judge Gabbert said, KSA 176807 is expressly applicable to all corporations, whether they expire by their own limitation or are otherwise dissolved, including revocation or forfeiture of articles of corporation. Says, we do not dispute that there is a distinction between administrative forfeiture and voluntary dissolution of a corporation. However, this distinction is irrelevant because the statute expressly applies to both voluntarily dissolved corporations and involuntary forfeited corporations. So throughout the briefing, and he touched on it in his argument, the appellant says, hey, this is different because we didn't really dissolve. We just failed to file claims, and so we were administratively forfeited, and that's a different thing. So I think the appellate court has addressed that succinctly and put that issue to bed. Judge Gabbert also quoted the Kansas Supreme Court and says, absent a court-ordered extension or an appointment of a trustee or a receiver, a Kansas corporation which has been dissolved, either voluntarily or involuntarily, may not sue or be sued after the three-year period has ended. So that issue is put to bed. Again, Mr. Lilich argues that the corporation has continued in business during a long period of forfeiture. That was factually disputed. Actually, at trial in this case, we were able to present evidence to dispute that, and Judge Wimes was able to hear that evidence in cross-examination at the trial court. We actually didn't even get to get into that, so the Missouri Court of Appeals assumes that to be true and finds it irrelevant. The court writes, KCCS argues that 176807 is inapplicable to involuntary, administrative forfeited cases where a corporation continues to conduct business after forfeiture. In support, they cite KSA 176807 and cite cases that say that cannot be held, can be invoked by a corporation to shield against a lawsuit when the corporation conducts business post-forfeiture or fails to formally dissolve. And then he says, KCCS is not being sued but is instead prosecuting rights it allegedly acquired as a corporation during a 30-year period in which it had no authority to conduct business but was nevertheless doing so. The extent to which a corporation continuing to conduct business post-forfeiture can invoke KSA 176807 as a shield to protect from suit is an issue wholly distinct from whether a corporation's unauthorized post-forfeiture business conduct can be used as a sword to defeat 6807's three-year deadline. And that's exactly what the appellant was attempting to do in this case, realizing as the case pended and prepared for trial, our state court trials had already been conducted, and they go and file 30 years' worth of annual reports to gain the reinstatement, and then try to say, well, it never happened. This dissolution never happened. The corporation was in existence all the time. Well, what really happened during that time, the most important thing that happened during that time, is Mr. Smith died in 2018. The contract, the insurance policy that is issued in this case, very clearly uses the date of death as the key time. It says that if there is no living beneficiary at the time of death, then it goes to the estate. This corporation was forfeited in 2018. It continued to be forfeited for two years after that. And so at the time of death, there was no right for them to, they had no claim that they could pursue. After an analysis of the difference reinstatement statutes, the court noticed that the plain language of KSA 17-7002 provides that, while reinstatement legitimizes the prior unauthorized business activities of the corporation, such that the corporation alone is liable for all corporate activities that occurred from the birth of the corporation through the forfeiture period and beyond. With regard to rights and credits, only the rights and credits which belonged to the corporation at the time, its articles of corporation or authority to engage in business became forfeited, and which were not disposed of prior to the time of its renewal or reinstatement, shall be vested in the corporation after its renewal or reinstatement. And the court concluded that this wording excludes any right that the corporation may have acquired during the 30-year period as I mentioned before. There has been argument that collateral estoppel wasn't proper by Judge Wynde because the first requirement of the collateral estoppel test is that the issues have to be the same. And that's not exactly correct. The exact legal issue doesn't have to be the same, the factual findings. In the Carancini case, which Judge Wynde referenced in his summary judgment, that's where they say that the collateral estoppel is given to and honored based upon factual findings. And that's what happened. The factual findings here are the same. The fact is this is a corporation that was not in existence pursuant to Kansas law. It had no rights to make any claim. It couldn't sue. It couldn't be sued. It couldn't collect money. It couldn't have a bank account. It couldn't do intercontracts. It couldn't buy life insurance policies and it couldn't collect life insurance policies during that period of time. And the same issue as what was pending before the state court and has been resolved by the Court of Appeals. Briefly, as my time is up, I want to touch on the equitable claim. There were no equitable claims when this case began. The equitable claims came before the court at the last minute after summary judgment at the same time, basically, that summary judgment was granted, and Mr. Lilich was allowed to file an amended petition and submit equitable claims on behalf of Dora Clark, which resulted in her being awarded the refund of her money, of her premiums. What I would have to say about the equitable claim is in order to draw upon the equity of a court, a party needs to come with clean hands. And in this case, we have a lady who bought a life insurance policy for a person who has not worked for her since 1994, and she continued to pay premiums. She's made allegations that the premiums were made on behalf of a corporation, but the evidence was that she made the premiums out of her own pocket. And so I don't know if she was gambling on his life or she just didn't understand insurable interest, but this is not a party that comes to the court in a position to draw upon the court's equity and should not be awarded any additional money. Thank you. Thank you. Mr. Lilich, we'll give you a minute for rebuttal. Thank you, Your Honor. The only evidence that was presented in district court regarding the history of the corporation's activities from personal knowledge was that of Dora Clark Wall and her son, who handled the business affairs of the corporation. The appellee's evidence at the district court level was from family members who didn't have personal knowledge of the corporation's business. Thus, I would encourage this court to consider that insofar as Judge Wyme's findings in that regard. If this court adopts the Missouri Court of Appeals analysis insofar as Kansas Corporation law in KSA 17-7002, the insurance contract preexisted the forfeiture. Judge Gabbard's analysis was that certain things vest back to the corporation post-reinstatement. Under the plain language of 17-7002, upon reinstatement, that reinstatement shall validate contract interests of the corporation. Thus, upon reinstatement, that interest in Kansas City Chrome Shop should vest back to the corporation. I appreciate the court's consideration of this matter. Thank you. The court appreciates the appearance and arguments of both counsel. The case will be decided in due course.